## Wood v. Schoen, Appellant.

Wills— Construction—Intention of testator.

The purpose in construing a will is to ascertain the intention of the testator so that it may be carried out in the disposition which he has made of his property. Technical rules of construction should only be resorted to and applied in the interpretation of wills when found to be necessary in determining the meaning of the instrument so as to effectuate the purpose of the testator. If the language employed by him in disposing of his estate is plain and clearly discloses his intention, the will interprets itself, and hence no rules of construction are necessary to aid in its interpretation.

A universal rule in construing a will requires that, if possible, effect shall be given to every word, and every part of it.

The usual and ordinary meaning is to be given to words and terms in a will, unless the context shows that such was not the meaning intended by the testator.

Wills—Remainder—Vested and contingent estates—Construction of will.

Where property is limited by will to one for life, and after his decease

to the testator's next of kin or heirs or other classes of persons similarly described, the persons who answer that description at the death of the testator and not those who answer it at the death of the tenant for life shall take, unless a contrary intent clearly appears from the will; but when it clearly appears that the testator intended his heirs or next of kin at the death of the tenant or legatee for life to take, such intent will prevail.

Testator after having given the income of his estate to his wife and three sisters for their lives directed as follows: "Upon the death of my said wife and all of my first named three sisters, I will, devise and bequeath the one-third of the real estate and moneys from the personal estate in the hands of my said trustees to my nephew and my niece in fee, equally; the other two-thirds thereof to such child or children as I may leave, and the issue of such child or children as may be deceased. And in default of such child or children or issue, then to those who would then be entitled thereto under the intestate laws of this state." *Held*, (1) that it was the intention of testator to devise the two-thirds of the remainder of his real estate to those who should be his heirs at the expiration of the particular estate, and not to those who were his heirs at the time of his death; and (2) that upon testator dying without leaving children, or the issue of children, but leaving his wife and sister surviving, his heirs at the time of his death could not make a good title to the testator's real estate.

Argued Oct. 24, 1906. Appeal, No. 127, Oct. T., 1906, by defendant, from judgment of C. P. No. 2, Allegheny Co., July T., 1906, No. 100, for plaintiffs on case stated in suit of James S. Wood and Fannie J. Wood, his wife, Allen B. Wallace, Elizabeth S. Wallace, Mary Scott and S. W. Dana and Richard F. Dana, Executors of the estate of Catharine N. Scott, deceased, v. W. H. Schoen. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, ELKIN and STEWART, JJ. Reversed.

Case stated to determine the marketable title to real estate. Before SHAFER, J.

From the record it appeared that the defendant agreed with plaintiffs to purchase a lot of land in the second ward of the city of Pittsburg. The land formerly belonged to James Scott. The latter died leaving a will by which he directed, inter alia, as follows :

" 1. I devise all of the real estate of which I may die seized, wherever the same may be situated, to George W. Van Fleet, of the place aforesaid, and —————————, of —— —————————, and to such successor or successors as may be appointed in law, in trust for the uses and purposes hereinafter expressed.

" In the event of my death without children my said trustee shall pay one-half of the rents, issues and profits of said real estate, after the deductions aforesaid, annually to my wife Emma, during her natural life, and also the one-half of the interest annually upon the moneys invested as aforesaid, less the expenses—the other half of the said rents, issues and profits and interest, less the deductions aforesaid annually to my sisters, Eliza S., Mary and Catharine N., during their joint lives and to survivor or survivors for life.

" Upon the death of my said wife and all of my first named three sisters, I will, devise and bequeath the one-third of the real estate and moneys from the personal estate in the hands of my said trustee to my nephew, James Wood, and my niece, Lizzie Wallace, in fee, equally ; the other two-thirds thereof to such child or children as I may leave, and the issue of such child or children as may be deceased. And in default of such child or children or issue, then to those who would then be entitled thereto under the intestate laws of this state. And I authorize my said trustees aforesaid to convey and assure the same by proper assurances in law to said persons respectively."

James F. Scott, deceased, left to survive him neither child nor descendants in any degree, but did leave to survive him a widow, Emma E. Scott, and three sisters, viz. : Eliza S. Scott, Mary Scott and Catharine N. Scott, spinsters, and a nephew, James Wood, a son of Grace Wood, a deceased sister, and a niece, Lizzie Wallace, daughter of Ellen Wallace, a deceased sister, all of full age.

The plaintiffs were the heirs, or the representatives of the heirs, of James F. Scott. The defendant refused to accept a deed, claiming that the title offered to him was not marketable. The court entered judgment for plaintiffs on the case stated.

*Error assigned* was judgment for plaintiffs on case stated.

*George T. Hildebrand*, for appellant.—A remainder must be regarded as vested rather than contingent, if such a construction is possible : Buzby's App., 61 Pa. 111.

The following cases in Pennsylvania, wherein it was decided that the class of persons taking was to be determined as of the time of the death of the testator, had in controversy certain

clauses : Baskin's App., 3 Pa. 304 ; Etter's Estate, 23 Pa. 381 ; Ramsey's Estate, 1 Am. Law Reg. 94 ; Riehle's App., 54 Pa. 97 ; Buzby's App., 61 Pa. 111 ; McCrea's Estate, 180 Pa. 81 ; Stewart's Estate, 147 Pa. 383 ; Crawford's Estate, 17 Pa. Superior Ct. 170.

*S. W. Dana*, with him *Richard F. Dana*, for appellees.— A devise or bequest to heirs, or heirs at law of the testator, or to his next of kin, should be construed as those who are such at the time of the testator's decease, unless a different intent is plainly manifested by the will : Bullock v. Downes, 9 H. L. Cas. 1 ; Mortimore v. Mortimore, L. R. 4 App. Cas. 448, aff'g Mortimer v. Slater, L. R. 7 Ch. D. 322 ; Michell v. Bridges, 13 W. R. 200 ; In re Morley's Trusts, 25 W. R. 825 ; Woods's App., 18 Pa. 478 ; Riehle's App., 54 Pa. 97 ; Buzby's App., 61 Pa. 111 ; Etter's Est., 23 Pa. 381 ; McCrea's Est., 180 Pa. 81 ; Gantz v. Tyrrell, 7 Pa. Superior Ct. 249 ; Donohue v. Mc-Nichol, 61 Pa. 73 ; Bell's Est., 147 Pa. 389 ; Abbott v. Bradstreet, 85 Mass. 587 ; Childs v. Russell, 52 Mass. 16 ; Minot v. Tappan, 122 Mass. 535 ; Rotch v. Rotch, 173 Mass. 125 (53 N. E. Repr. 268) ; Dove v. Torr, 128 Mass. 38.

OPINION BY MR. JUSTICE MESTREZAT, January 7, 1907 :

The purpose in construing a will is to ascertain the intention of the testator, so that it may be carried out in the disposition which he has made of his property. Technical rules of construction should only be resorted to and applied in the interpretation of wills when found to be necessary in determining the meaning of the instrument, so as to effectuate the purpose of the testator. If the language employed by him in disposing of his estate is plain and clearly discloses his intention the will interprets itself, and hence no rules of construction are necessary to aid in its interpretation. As well said by SHARSWOOD, J., in Reck's Appeal, 78 Pa. 432 : " All mere technical rules of construction must give way to the plainly expressed intention of a testator, if that intention is lawful. It is a rule of common sense as well as law not to attempt to construe that which needs no construction."

The learned judge below correctly observes in his opinion that remainders are to be regarded as vested rather than contingent, and that where property is limited by will to one for

life, and after his decease to the testator's next of kin or heirs, or other classes of persons similarly described, the persons who answer that description at the death of the testator and not those who answer it at the death of the tenant for life shall take, unless a contrary intent clearly appears from the will. But it should be added that when it clearly appears that the testator intended his heirs or next of kin at the death of the tenant or legatee for life to take, such intent will prevail: Buzby's Appeal, 61 Pa. 111.

James F. Scott devised all his real estate to a trustee for the purposes named in his will. If he died without children, he directed his trustee to pay one-half of the proceeds of the real estate to his wife for life, and the other half to his three sisters and the survivor of them for life. Upon the death of his wife and sisters he devised one-third of his real estate to a nephew and niece, and " the other two-thirds thereof to such child or children as I may leave, and the issue of such child or children as may be deceased ; and in default of such child or children or issue, then to those who would then be entitled thereto under the intestate laws of this state. And I authorize my said trustees aforesaid to convey and assure the same by proper assurances in law to said persons respectively."

The land involved in this action passes under this last clause of the testator's will, and, as the learned judge of the court below says, the question is whether it passed as a vested remainder to those who were at the time of the death of the testator entitled under the intestate laws, or as a contingent remainder to those who shall, at the death of the survivor of the life tenants, one of whom is yet living, be the next of kin of the testator and entitled to take as if the testator had died intestate at the moment of the death of the survivor of the life tenants. The court held that the estate devised to the remainder-men vested at the death of the testator, and passed to those who were entitled under the intestate laws at that time.

We think this was an erroneous interpretation of the will and defeats the clearly expressed intention of the testator. It is produced by the application of the rule of construction noticed above, without giving due consideration to the language of the will. This language is neither ambiguous nor

indefinite, and therefore it is not necessary to invoke the aid of any rules of interpretation in construing the instrument. The testator did not die intestate as to any part of his estate. The one-third of his real estate he devised to his nephew and niece in fee, and the other two-thirds in dispute here were given to those who, at the expiration of the particular estate, would then be entitled thereto under the intestate laws of the state. This did not create an intestacy, but was simply descriptive of the persons who were to take as devisees under the will. They were such as would be entitled under the intestate laws, at the time the clause of the will became operative. This phrase of the devise, therefore, can have no significance in fixing the time at which the remainder-men were to be determined. The simple question here is, did the testator limit the estate devised to those entitled under the intestate laws to persons of that description living at his death, or at the death of the survivor of the life tenants? The will itself, unaided by any technical rules of construction, gives a definite and unequivocal answer to the question. Its language is: "Upon the death of my said wife and all of my first named three sisters, I will . . . . the other two-thirds . . . . then to those who would then be entitled thereto under the intestate laws of this state." The clause provides not only for the event which shall precede the passing of the estate, but also the time when the remainder-men are to be determined and the estate shall pass. The word "then" is used twice in this collocation of words and for both purposes. In the first connection, it is manifestly used as a conjunction, meaning "in that event," and in the second as an adverb of time, meaning "at that time." Inserting the definition for the word itself the clause will read as follows: "Upon the death of my said wife and all of my first named three sisters . . . . in that event to those who would at that time be entitled thereto under the intestate laws of this state." A universal rule in construing a will requires that if possible effect be given to every word and every part of it; and an equally well-established rule requires the usual and ordinary meaning to be given to words and terms in a will, unless the context shows that such was not the meaning intended by the testator. We must therefore give effect to "then" as used in both connections. It cannot be

used in the second connection as a conjunction for the reason that it would be surplusage, it already having been used manifestly in that sense in the same sentence. Having been used twice so closely together in the same sentence, the word clearly was not employed the second time for the same purpose nor with the same meaning as at first used. If, therefore, it is given its adverbial significance in the second connection, it must refer to the death of the surviving life tenant as the time at which the remainder-men are to be ascertained. That is the only reasonable interpretation of which the word used in that connection is susceptible, and consequently the meaning with which the testator used it. This construction, we think, not only gives full effect to the word, but carries out the evident intention of the testator as disclosed by the entire will.

We cannot agree with the contention of the learned counsel of the appellee that the effect of the disposition of the remainder by the will is the same as if the testator had made no disposition of that part of his estate and had died intestate as to it. In the latter instance, it may be conceded that the intestacy would have taken effect as of the date of the testator's death and the persons then competent would have taken the estate subject to the prior life tenancies. But the manifest purpose of the testator was to change the effect of an intestacy occurring at his death, and to give his real estate to persons other than those who would be his heirs at that time, and hence he devised it, on the death of the life tenant, to those "who would then be entitled" and not to those "who are entitled" under the intestate laws of the state. If the testator had used the latter expression there would be some ground for the appellee's contention. But the language employed leaves no doubt as to the persons who were intended as his beneficiaries.

We are of opinion that it was the intention of the testator, as disclosed by his will, to devise the two-thirds of the remainder of his real estate to those who shall be his heirs at the expiration of the particular estate, and not to those who were his heirs at the time of his death.

The agreement among those who were heirs of the testator at the time of his decease did not create vested interests in them so as to authorize them to convey a good title to the defendant. The will created a contingent remainder in a class

to be ascertained at the death of the surviving life tenant, and hence only those of the class living at that date will have an interest in the remainder and will be capable of contracting in regard to it. We cannot see that Ralston's Estate, 172 Pa. 104, has any application to the facts of this case.

The judgment of the court below is reversed, and in accordance with the terms of the case stated, judgment is now entered in favor of the defendant and against the plaintiffs for the sum of $1,000.