## Thompson Trust.

Argued October 4, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Elder W. Marshall,* with him *P. K. Motheral,* and *Reed, Smith, Shaw & McClay,* for appellant.

*Martin L. Moore, Jr.,* with him *Marcus W. Stoner* and *J. M. Stoner & Sons,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, November 14, 1949:

The appeal involves the construction of an *inter vivos* deed of trust. The principal question is whether the interest of a deceased great granddaughter was vested or contingent. Another question presented is whether heirs of settlor are to be determined as of the date of his death or that of the life tenant. The court below, one judge dissenting, decided that the interest

was contingent and settlor's heirs were to be determined as of the date of the death of the life tenant. This appeal followed.

John D. Thompson, settlor, executed an *inter vivos* deed of trust dated December 3, 1908. He died December 16, 1911. By the terms of the deed settlor transferred to the named trustee 300 shares of stock of a trust company. The trustee was directed to: ". . . collect the dividends declared and paid thereon and pay the same as they shall be collected unto my granddaughter, Bessie Emma Tayman Ginther, of said City of Pittsburgh, for and during the term of her natural life, and from and after the death of my said granddaughter, to pay said dividends, as they shall be received, unto her children, and as each child reaches the age of twenty-one years to transfer to such child a pro rata number of shares of said stock, and in default of any such child reaching twenty-one years, to transfer said stock to my own heirs; . . .".

The granddaughter received the dividends until her death on January 26, 1948. Her only child, Louise Eleanor Ginther, predeceased her, having attained the age of 21 years and 26 days. The great granddaughter's sole heir (under the law of her then domicil) was her father, George Ginther, who subsequently died leaving as his sole heir (under the law of his then domicil) his wife, Bessie Emma Tayman Ginther (the life tenant), who thereafter died testate, and whose executor is the appellant herein. Settlor at his death left surviving as his heirs and next of kin a son, a granddaughter, daughter of a deceased daughter (the life tenant herein), and two granddaughters, daughters of a deceased son.

Whether the interest of the great granddaughter was vested or contingent depends upon whether the language of the deed is construed to convey an absolute remainder to her but merely postpones its enjoyment

until the great granddaughter had attained 21 years (in which event it is vested) or whether the grant is intended to be effective *only* in the event that the great granddaughter survived her mother and attained 21 years (in which event it is contingent).

An examination of the language discloses that there are no express words of gift independent of the direction and time for transfer. The gift is necessarily *implied* solely from the direction to transfer. As the implied gift is inseparable from the direction to transfer, it necessarily partakes of the quality of the direction. This renders the grant to the great granddaughter contingent. Chief Justice GIBSON said in *Moore v. Smith,* 9 Watts 403, at p. 407: ". . . where there is no separate and antecedent gift which is independent of the direction and time for payment, the legacy is contingent; and it seems to be as well founded in reason, as rules of interpretation usually are. Where a gift is only implied from a direction to pay, it is necessarily inseparable from the direction, and must partake of its quality; insomuch that if the one is future and contingent, so must the other be."

In *Rickenbach Estate,* 348 Pa. 121, p. 125 et seq., 34 A. 2d 527, we discussed this canon of construction and cited the principal cases which have applied the doctrine. The learned auditing judge correctly ruled that the interest was contingent.

The deed provided that upon default of great grandchildren surviving the life tenant and attaining 21 years, the trustee was *"to transfer said stock to settlor's own heirs."* The learned court below decided that the heirs were to be determined as of the date of the death of the life tenant, relying upon *Laughlin's Estate,* 336 Pa. 529, 9 A. 2d 383, and *Barnard Estate,* 351 Pa. 313, 41 A. 2d 578.

The date of this deed was *prior* to the effective dates of the Acts of June 29, 1923, P. L. 914, 21 PS, 11 and

April 24, 1947, P. L. 100, 20 PS, 301.14. The gift to heirs or next of kin therefore refers to those who were such at the time of settlor's death *unless a different intent is plainly manifest.* And if the tenant for life is of next of kin, he is not thereby excluded: *Buzby's Appeal,* 61 Pa. 111; *Stewart's Estate,* 147 Pa. 383, 23 A. 599; *Peirce et al. v. Hubbard,* 152 Pa. 18, 25 A. 231; *McCrea's Estate,* 180 Pa. 81, 36 A. 412; *Everitt's Estate (No. 1),* 195 Pa. 450, 46 A. 1; *Wood v. Schoen,* 216 Pa. 425, 66 A. 79; *Fitzpatrick's Estate,* 233 Pa. 33, 81 A. 815; *McFillin's Estate,* 235 Pa. 175, 83 A. 620; *Bache's Estate,* 246 Pa. 276, 92 A. 304; *Tatham's Estate,* 250 Pa. 269, 95 A. 520; *Hildebrant's Estate,* 268 Pa. 132, 110 A. 760; *Dailey's Estate,* 268 Pa. 379, 111 A. 922; *Leech's Estate,* 274 Pa. 369, 118 A. 354; *Miller's Estate,* 275 Pa. 30, 118 A. 549; *Murphey's Estate,* 276 Pa. 498, 120 A. 455; *Stoler's Estate,* 293 Pa. 433, 143 A. 121; *Whiteside's Estate,* 302 Pa. 452, 153 A. 728; *Bechtel's Estate,* 303 Pa. 107, 154 A. 366; *Smith's Estate,* 314 Pa. 437, 171 A. 587; *McKee's Estate,* 82 Pa. Superior Ct. 407; *Barge's Estate,* 126 Pa. Superior Ct. 332, 191 A. 184.

All that this settlor wrote in the deed was that after the death of the life tenant, and upon default as therein stated, the transfer was to be made "to [his] heirs." Solely from this language the learned auditing judge *inferred* that settlor intended the heirs to be determined as of *that* date. But this inference is not justified. In both *Laughlin's Estate* and *Barnard Estate,* supra, plain and unequivocal language was employed which manifested a clear intent that heirs were to be determined as of the date of death of the life tenant. In the *Laughlin* case it plainly appeared, from a reading of the entire will, that testator's use of the term *"surviving children"* meant children who survived the life tenant and *not* the testator. In the *Barnard* case the language disclosed an intent to determine the heirs as of the death of the life tenant. We said, in that case, p. 316:

"The words of this will clearly indicate that the true intent of testator was to determine the heirs as of the time of *distribution*. This is not a case of the gift of a life estate with remainder to heirs, of which the life tenant was one. This testator worked out a scheme of distribution whereby his wife took a life estate in the whole trust. *At her death* one-half (or so much thereof as was appointed) passed according to her will. The rest went to testator's heirs. The heirs, under these circumstances, are to be determined as of the date of the death of the life tenant, whose estate is thereby excluded. (citing cases)

"Any possible doubt is dispelled when it is considered that testator interpreted his own will. He wrote: 'My purpose being that my wife, *although having but a life interest in the whole of the said trust* . . .' (italics supplied). If we were to adopt appellant's construction, testator's widow would possess an intestate share in remainder *in addition* to her life estate, which would be in contradiction of testator's express words."

In the present case the sole fact that settlor transferred the remainder to his own heirs following the death of the life tenant is not a sufficient indication of intent to rebut the presumption. There must be more than that, otherwise all grants and devises to heirs after the death of the life tenant would be to heirs *determined as of that date*. This would make the canon of construction and above cited cases meaningless.

The decree of distribution is modified. It is directed that distribution be made to the heirs at law and next of kin of settlor determined as of December 16, 1911, the date of settlor's death.

The decree, as modified, is affirmed. Costs to be paid out of the corpus of the fund.